HOME FIRE INSURANCE COMPANY OF OMAHA V. JOACHIM BREDEHOFT.

FILED SEPTEMBER 16, 1896.　No. 6727.

1. **Compromise and Settlement: ACTIONS: BAR: FRAUD.** Where a creditor accepts from his debtor a part of an unliquidated demand against him in full settlement and compromise thereof, such act is a defense and bar to an action by the creditor against the debtor for the original demand, unless it be pleaded and proved that the settlement was procured by fraud, mistake, or duress.

2. ——: ——: ——: ——. The burden of showing that a settlement was procured by fraud is on the party alleging it.

3. ——: ——: ——: ——: EVIDENCE. Evidence examined, and *held* insufficient to sustain the finding of the jury that the compromise and settlement pleaded by the plaintiff in error in bar to the action was procured by fraud.

ERROR from the district court of Otoe county.　Tried below before CHAPMAN, J.

*Jacob Fawcett* and *Greene & Breckenridge,* for plaintiff in error.

*E. F. Warren* and *John C. Watson, contra.*

RAGAN, C.

In the district court of Otoe county Joachim Bredehoft recovered a judgment against the Home Fire Insurance Company of Omaha, Nebraska, on an ordinary fire insurance policy, to reverse which judgment the insurance company prosecutes to this court a petition in error.

Of the arguments made by plaintiff in error for a reversal of this judgment we notice only one, namely, the sufficiency of the evidence to sustain the verdict of the jury.　To the action of Bredehoft the insurance company interposed three defenses: (1) That Bredehoft had represented and warranted to the insurance company at

the time he obtained the policy in suit that he was the owner in fee-simple of the real estate on which the insured building stood and the owner of the household and kitchen furniture; that these representations were false; that at the time of making them the title to said real estate was held by Bredehoft's wife, as was also the title to the household goods; (2) that at the time Bredehoft made application for and received the insurance policy made the subject of this suit all the property covered by the policy in suit was already insured in the name of Bredehoft's wife by the Continental Insurance Company; (3) that the insurance company and Bredehoft, before the bringing of this suit, had settled and compromised the differences existing between them by the insurance company paying Bredehoft the sum of $200, the full amount of his insurance on household goods, in full settlement of all his claims against the insurance company under the policy in suit; that he had accepted and retained said sum in compromise and settlement of his claims against the insurance company under the policy sued on.  To the third defense Bredehoft replied that the $200 received by him were for his loss on the insured personal property, and that if the insurance company had receipts or releases exonerating it from liability to pay the loss sustained upon the dwelling house, such receipts and releases were procured by fraud and fraudulent concealment on the part of the insurance company and received by him, Bredehoft, in ignorance of the terms of such release.  We pass no opinion whatever upon the merits of the first two of said defenses interposed by the insurance company to this action, nor upon the sufficiency of the evidence to sustain the finding made by the jury so far as those two defenses are concerned.

Our inquiry is limited to the questions whether the evidence sustains the finding of the jury (1) that no compromise and settlement were made as pleaded by the insurance company between it and Bredehoft; (2) and whether such compromise and settlement, if made, were obtained

by mistake, fraud, or deceit practiced by the insurance company or someone representing it. The evidence in the record is uncontradicted that the insurance company paid to Bredehoft $200, and that he signed and delivered to it a receipt reciting that he had received said sum of money in full of all his claims against the insurance company under the policy in suit, and that he has hitherto retained said sum of money and never at any time offered to return it, or any part of it, to the insurance company. The money was paid to Bredehoft by means of a draft drawn to his order. Attached to the draft was a receipt which recited that the draft, when paid, "will be in full satisfaction of all claims and demands upon said company for loss and damage by fire * * * to property, consisting of household goods and frame dwelling." Bredehoft indorsed this draft and at the same time signed his name to the receipt attached thereto, and received the money for which the draft called. On the same date he signed another receipt, which recited that the sum of money received by him was in full satisfaction of all claims against the insurance company for loss and damage by fire to his household goods and frame dwelling. He also signed another written paper, which recited that he had received the $200 from the Home Fire Insurance Company in full of the damage done to his household goods. This paper also recited that the farm and the insured building thereon belonged to his wife and had been by her mortgaged to the Lombard Investment Company, and a policy of insurance taken out in the Continental Insurance Company in his wife's name covering both the house on the land and the household goods, and that his taking out insurance on this same property in the Home Fire Insurance Company was an oversight on his part and that none of the property insured by him in the Home Fire Insurance Company was his, except the household goods, and that the Home Fire Insurance Company was not liable for loss on the building on the real estate and that he made no claim against

it for the loss on the dwelling house. About the same time Bredehoft and his wife signed another paper, and swore to it before a justice of the peace, in which it was recited that the personal property was that of Joachim Bredehoft and not the property of the wife. Bredehoft also testified that he was a German and could not read nor write the English language. He also testified that he did not "understand" at the time he received this $200 from the insurance company that he was settling his claims against the Home Fire Insurance Company for the loss of the dwelling-house. He admitted the signing of the receipts and papers alluded to above, and further stated that he did not know whether these receipts and papers of settlement were read over to him at the time he signed them or not. On the other hand, the evidence is very strong to the point that all these papers were correctly read over to Bredehoft and their contents and meaning explained to him before he signed them and received the money. But the important thing to be borne in mind is that it nowhere appears in the evidence that these papers and terms of settlement were not read over and explained to Bredehoft before he signed them and received the money, nor is it claimed or pretended that they were misread to him. If there was any evidence in the record that these papers and receipts of settlement and compromise were wrongfully read over and explained to Bredehoft and he was misled thereby, then we have not the slightest doubt but that the evidence would sustain the finding of the jury.

In *Slade v. Swedeburg Elevator Co.*, 39 Neb., 600, it was held: "A compromise of honest differences, whereby a less sum than that claimed has been paid and accepted in full of plaintiff's claim, bars the right of plaintiff to insist upon a recovery of the amount originally claimed by him." And in *Treat v. Price*, 47 Neb., 875, it was said: "The rule that when a certain sum is due from one to another, the payment of a lesser sum is no discharge as to the remainder, notwithstanding an agreement to that

effect is founded upon the fact that the later agreement is without consideration." It was further held in that case: "Such rule does not apply where the amount due is disputed or unliquidated." In the case at bar the insurance company refused to pay any part of the loss, alleging as an excuse therefor that Bredehoft had represented and warranted to it, and thereby induced it to issue its policy, that he was the owner in fee-simple of the real estate and the owner of the household goods insured; that such representations were false; and that at the time of obtaining the policy from the Home Fire Insurance Company the property which it insured was already insured, and that by the terms of its contract of insurance its policy was void by reason of the existence, without its knowledge or consent, of the former insurance. Bredehoft, on the other hand, was claiming the entire insurance on the dwelling-house and the household furniture. Here, then, was a dispute existing between these parties. It may be that the reasons alleged by the insurance company as a reason for its not paying the policy, if true, would not have afforded it a legal defense to Bredehoft's action. But the record justifies us in saying that these reasons were put forward by the insurance company in good faith. In other words, a difference of opinion existed between these parties as to whether anything was due from one to the other, the insurance company claiming that it was not liable for anything under the policy, and this claim was not a mere pretext conjured up by the insurance company for the purpose of compelling a settlement or compromise. The claim of Bredehoft was settled and compromised by the insurance company paying the loss on the household goods and Bredehoft waiving his right of action against the insurance company for the loss sustained on the building. The evidence does not show that this settlement or compromise was procured by fraud, by mistake, or by undue influence. It does not show that at the time Bredehoft received this money and signed the settlement papers

they were not read over and explained to him, nor does it show that they were wrongfully read or wrongfully explained to him. The evidence, therefore, does not sustain the finding of the jury that no compromise and settlement as pleaded by the insurance company were made, if the jury made such finding, nor does the evidence sustain the finding of the jury that the compromise and settlement pleaded and proved were procured by fraud, deceit, mistake, or misrepresentation of any kind. The verdict lacks evidence to sustain it. The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.